UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN J. CHAPMAN

v.                                    CASE NO. 3:03CV 316 (JCH)

EXPERIAN INFORMATION SERVICES, INC.
CHASE MANHATTAN BANK USA, N.A.                          March 2, 2004

MEMORANDUM IN SUPPORT OF PROTECTIVE ORDER

Plaintiff contends that defendant Chase violated the Fair Credit Reporting Act and the Equal Credit Opportunity Act by sending him a letter reducing his line of credit which, on its face, violated both those Acts. Under CUTPA, he claims that Chase represented in writing that it would take the false bankruptcy notation off his credit report, but did not do so until well after this suit was filed. Plaintiff contends that Experian violated the Fair Credit Reporting Act by failing to contact purported creditors when he informed Experian that his credit file was mixed with an Oregon resident's whose SSN was one digit different from his; and by reinserting the Oregon man's negative ANCBB tradeline on his file without complying with the FCRA notice requirements. Experian's documents support this claim.

The defendants have requested and received extensive written discovery from plaintiff. Finally, defendants sought plaintiff's deposition at which he appeared on Feb. 24, 2004. Unfortunately, Chase conducted the deposition in a manner which made it clear that its purpose was not to obtain additional facts about the subject matter of the complaint but to oppress the plaintiff. Plaintiff's counsel has never been constrained to suspend or terminate a deposition until now; normally Connecticut counsel do not engage in the "sharp" tactics sometimes characteristic of New York practitioners. Moreover, if disputes arise during a deposition, the parties normally go

on to other question and determine later whether to move to compel. Chase repeatedly declined the plaintiff's request to move on to other questions; Experian declined to go forward with its deposition twice on the record, and again after we reconvened to allow it to do so.

The deposition was unreasonably annoying, because Chase counsel questioned with a demeaning expression (smirk or sneer) on his face, and persisted in doing so despite counsel's request. Transcript (attached) p. 29 line 14. Chase persisted in asking repetitious and meaningless questions despite counsel's request not to do so. "You're asking an awful lot of repetitious and meaningless questions. So why don't we stop harassing the witness and get on to something you really want to know about. Trans. p. 29 lines 5-8. Counsel warned Chase about her perception that its tactics were oppressive, harassing, threatening, [including} erroneous statements of law to misrepresent to my client" at p. 14 line 24. A sample of the improper questioning follows:

<u>Legal Questions.</u> Chase asked about plaintiff's "contentions," "proof," "evidence," "damages," "actual damages." These questions do not address the facts of the case and come fraught with legal significance and evaluation and analysis of counsel. E.g., Trans. p. 8 line 1; p. 9 line 16; p. 11 line 18; p. 12 line 4; p. 29 line 23. Depositions focus on what the witness has done, seen, heard, and experienced. Questions about legal contentions are limited to written discovery. Fed. R. Civ. P. 33(c); <u>Rifkind v. Superior Court</u>, 27 Cal. Rptr 822, 825 (Cal. App. 1994). Asking legal questions of a lay witness does not lead to admissible evidence, within the limitations of Rule 26(b)(1). Even when the witness expressed discomfort about answering a legal question, Chase oppressively persisted. E.g., Trans p. 12 line 12 - 20.

<u>Deceptive question.</u> Chase asked the witness about his answer to an interrogatory, itself improper. Questions about the discovery process, rather than the underlying facts of the case, are

improper.[1] But first, Chase asked the witness to read *only part* of his verification, omitting the part which expressly stated, "As to legal contentions and analysis I have no personal knowledge, but I rely upon counsel,." Chase then proceeded to ask about legal contentions and analysis (as above) even though the witness had already affirmed he had no personal knowledge.

<u>Questions not within the witness's knowledge.</u> Chase was intensely interested in asking questions about how *Chase* managed to put the wrong SSN on plaintiff's account. When plaintiff answered within his knowledge, Chase figuratively browbeat the witness to try to get whatever other answer it wanted. Trans. p. 26 – 32; questions repeated at lines p. 26 lines 9, 23; p. 27 lines 1, 15, 20; p. 28 lines 11, 16; p. 29, line 4 (23); p. 39 line 14; p. 31 line 6, 11.

<u>Repetitive / argumentative questions.</u> The above questions about Chase's SSN insertion form one example. Immediately thereafter, Chase continued a series of questions about documents supporting plaintiff's damages claim. (Plaintiff had already answered that there were no documents in response to written discovery.). See Tran. p. 24 line 3, p. 25 line 11; pp. 32-40. The witness answered to the best of his ability several times; Chase still harassed him. Tran. p. 36:

    Q. As I understand the response to this interrogatory, sir, there are no documents to support the claim for actual damages relating to embarrassment, humiliation, inconvenience, injury to credit reputation, out-of-pocket costs for mail, copy of credit reports. Is that still the case today, sir?

    A.   I thought that I had answered that with my last statement. I don't know, Mr. Stagg, how one assembles documentation of ills that are imposed upon them. The documentation seems to me to be within the paperwork that lies on this table. In the letters that show the damage, the reason for the damage, the apology letter, and then the letter that reduces my credit line, then an apology letter, kinds of things are my documentation.

---

1 <u>Maple Drive-In Theatre Corp. v. RKO Corp</u>., 153 F.Supp. 240 (S.D.N.Y. 1956<u>); Hopkinson Theatre Inc. v. RKO</u>, 18 F.R.D. 379, 383 (S.D.N.Y. 1956); <u>U.S. v. National Steel Corp</u>., 26 F.R.D. 599 (S.D. Tex. 1960)

3

<u>Cutting off the witness.</u> Probably the only proper use of the deposition was to assess the plaintiff's emotional distress. Yet, when plaintiff tried to describe his distress, Chase cut him off – plainly not interested. Trans. p. 25 line 7; p. 36 line 23.

<u>Waiver of further questions.</u> Chase purported to want to continue the deposition to ascertain what "documents" plaintiff had to support his damages claim. Plaintiff answered the question over and over to the best of his understanding of the question. Chas has now served its fourth document demand, for the "expense-related documents" referred to in the deposition, obviating further questioning along that line. Further, plaintiff requested Chase to go on to other topics, rather than terminate the deposition. Chase refused. Trans. p. 39 line 18, p. 40 lines 6, 12. Plaintiff requested Experian to go forward with its deposition. Experian refused, Trans. p. 15 line 10, p. 37 line 25. Experian refused. We reconvened on Experian's representation that it would go forward with its deposition. Experian again refused.

## CONCLUSION

This is a document-based case, not a case involving differing observations of disputed underlying facts. In view of the extensive written discovery, most of the deposition was unreasonably cumulative or duplicative, and could not resolve any issues other than plaintiff's personal reaction to the defendants' wrongdoing. Chase conducted the deposition in a manner which exacerbated its own wrongdoing. Both defendants waived further questioning.

Plaintiff's motion for protective order should be granted.

THE PLAINTIFF

BY___/s/ Joanne S. Faulkner____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395

This is to certify that the foregoing was mailed on March 1, 2004, postage prepaid, to:

Thomas Stagg
Simmons, Jannace & Stagg
90 Merrick Ave # 102
East Meadow NY 11554

Michelle Blum
Jones Day
3 Park Plaza   #1100
Irvine CA 92614-5976

_____/s/ Joanne S. Faulkner___
Joanne S. Faulkner