IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JOHN J. CHAPMAN

v.     CASE NO. 3:03CV 316 (JCH)

EXPERIAN INFORMATION SOLUTIONS, INC.
CHASE MANHATTAN BANK USA, N.A.     April 7, 2004

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PARTIAL SUMMARY JUDGMENT AS TO CHASE

Plaintiff brought this case under the Fair Credit Reporting Act ("FCRA"), l5 U.S.C. §l681 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a *et seq.*, the Consumer Credit Reports Act ("CCRA"), Conn. Gen. Stat. §36a-695, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*, and common law. He alleged, inter alia, that Chase Manhattan Bank USA, N.A. (hereafter "Bank" or "Chase") reduced his credit and in conjunction therewith sent him an adverse action notice which provided him with false reasons or was misleading.

Plaintiff's motion for partial summary judgment is based only on Chase's nonexistent, false or misleading adverse action notice, which violated ECOA, FCRA, and CUTPA, as a matter of law. Other claims against the Bank are fact-based and must be decided by the jury.

Summary of Argument

Plaintiff opened a credit card account with Chase in October, 2000, and used it without incident until late November, 2002. He kept it current, paid up to date, and in good standing. In October, 2002, Chase closed plaintiff's credit card account. Chase did not give plaintiff an adverse action notice that his account, current and in good standing, had been closed. Plaintiff found out by having his card refused at the checkout counter. On Monday, November 25, 2002, he contacted Chase. Chase reopened his credit card account, which it had closed based its attributing the bankruptcy of an Oregon resident to plaintiff's account.

Despite Chase's knowledge on November 25 that plaintiff had not filed bankruptcy, by letter dated December 25, 2003, Chase significantly reduced plaintiff's line of credit. Chase gave plaintiff objectively false reasons for the reduction, including the non-existent bankruptcy. In the "adverse action" notice, Chase also misrepresented plaintiff's rights to get a free credit report. The adverse action letter violated ECOA, FCRA, and CUTPA.

Summary of Facts in Local Rule 56(a)1 Statement

The Connecticut plaintiff opened a credit card account with Chase in late 2000. Plaintiff used his account without incident and kept it current and up to date through the Fall of 2002.  One John Solberg, residing in Oregon, filed a Chapter 7 Bankruptcy Petition in Oregon on September 30, 2002.  Chase electronically received notice of Mr. Solberg's bankruptcy. On October 3, 2002, Mr. Solberg's full name, full Oregon address, the Eugene, Oregon location of the bankruptcy court, bankruptcy docket and

chapter number, filing date, name and phone number of debtor's attorney appeared automatically on plaintiff's 5491 account record. On October 9, 2002, a Chase operator pulled up plaintiff's account record, coded it as bankrupt based on the Solberg/ Oregon entries, and closed plaintiff's account.

Plaintiff first learned of a problem with his Chase credit card when he could not use it in November 2002 to make holiday purchases. He notified Chase, which realized the bankruptcy notation was inapplicable and reopened plaintiff's account. On Monday, November 25, 2002, plaintiff's account record was appropriately annotated, "CH (cardholder) did not file." On Nov. 27, "RMV BKCY (Remove bankruptcy) due to coded in error" was entered on Mr. Chapman's account record.

Yet, on December 25, 2002, plaintiff's account record was annotated "Credit Line Decrease Due to Crdt Bureau Info" identifying Experian as the source of the information. On December 25, 2002, Chase sent plaintiff a letter "from" Paul Arena reducing his line of credit from $5,900 to $3,000. The undisputed text of that letter is the basis for the violations described below.

## I.  CHASE'S FALSE AND MISLEADING ADVERSE ACTION NOTICE VIOLATED THE MANDATORY NOTICE REQUIREMENTS OF BOTH ECOA AND FCRA

Chase's facsimile-signed letter of December 25, 2002 provided its reasons for reducing plaintiff's credit line effective December 25, 2002, "As a result of information obtained on your credit report":

- The consumer credit report we received shows a recent delinquency.

- The consumer credit report we received shows a recent garnishment, foreclosure, lien, repossession, judgment, and/or bankruptcy.

> However, if changes are made to your credit status in the future, we welcome the opportunity to review your account within six months for a credit line increase.

First, Chase admitted that the disclosure it made to plaintiff, that "the consumer credit report we received shows a recent garnishment, foreclosure, lien, repossession, judgment, and/or bankruptcy" was false. The consumer credit report it received did not show any of those items. Even Chase's own internal account records, as of the month before the adverse action letter, confirmed that plaintiff had not filed bankruptcy.

Second, Chase identified Experian as the consumer reporting agency from which it obtained "information on your credit report." Experian's records show that it did not provide plaintiff's credit report to Chase during 2002.

Third, there was, in fact, no delinquency on plaintiff's Experian report in or about December, 2002.

Fourth, the notice given to plaintiff about his right to a free copy of his credit report was misleading.

4

A.  <u>The Bank gave false reasons for reducing plaintiff's credit line.</u>

Two separate subchapters of the Consumer Credit Protection Act mandate notice to the consumer when "adverse action" is taken against him, such as in this case when a credit line is reduced. The Equal Credit Opportunity Act (ECOA) includes detailed requirements about the specificity of the reasons for adverse action. [The other, the Fair Credit Reporting Act, 15 U.S.C. 1681m(a), is discussed below in Part B.]  ECOA, 15 U.S.C. §1691(d), in pertinent part, provides as follows:

> (2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by –
> > (A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; …
> 
> (3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

Pursuant to ECOA §1691b, the Federal Reserve Board has specified the requirements of ECOA in its Regulation B, 12 C.F.R. §202.9 and in its Official Staff Commentary, Supplement I to 12 C.F.R. Part 202. Thus, under Reg. B §202.9(b)(2), "The statement of reasons for adverse action required by paragraph (a)(2)(i) of this section must be specific and indicate the principal reason(s) for the adverse action." The Board has also provided sample notices, in Appx. C to Reg. B. Appendix C includes Form C-1, containing a check list of some twenty typical reasons for credit denial. Finally the Official Staff Commentary to Paragraph 9(b)(2) includes the following:

> 1. *Number of specific reasons*. A creditor must disclose the principal reasons for denying an application or taking other adverse action. The regulation does not mandate that a specific number of reasons be disclosed, but disclosure of more than four reasons is not likely to be helpful to the applicant.

5

>    2.  *Source of specific reasons*. The specific reasons disclosed under §202.9(a)(2) and (b)(2) must relate to and accurately describe the factors actually considered or scored by a creditor.
>    3.  *Description of reasons*. A creditor need not describe how or why a factor adversely affected an applicant. For example, the notices may say "length of residence" rather than "too short a period of residence.
>    4.  *Credit scoring system*. If a creditor bases the denial or other adverse action on a credit scoring system, the reasons disclosed must relate only to those factors actually scored in the system. Moreover, no factor that was a principal reason for adverse action may be excluded from disclosure. The credit must disclose the actual reasons for denial (for example, "age of automobile") even if the relationship of that factor to predicting creditworthiness may not be clear to the recipient. . . .
>    8.  *Automatic denial*. Some credit decision methods contain features that call for automatic denial because of one or more negative factors in the applicant's record (such as the applicant's previous bad credit history with that creditor; the applicant's declaration of bankruptcy, or the fact that the applicant is a minor). When a creditor denies the credit request because of an automatic-denial factor, the creditor must disclose that specific factor.

The laws and regulations quoted above mandate that the denial be specific and accurate as to the reasons for denial, and disclose the factors in the applicant's history which were determinative. Chase's notice did not comply.

When ECOA was amended in 1976 to add the requirement that creditors give specific reasons for the credit denial, Congress explained:

> The requirement that creditors give reasons for adverse action is, in the Committee's view, a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already overextended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the

6

mistake.

S. Rep. No. 589, 94th Con., 2d Sess. 4 (1976), *reprinted in* 1976 U.S.C.C.A.N. 403, 406. An accurate and specific notice would have a "beneficial educational effect on the credit-consuming public and a beneficial competitive effect on the credit marketplace." Id. at 409.

Chase admitted that the disclosure it made to plaintiff, that "the consumer credit report we received shows a recent garnishment, foreclosure, lien, repossession, judgment, and/or bankruptcy" was false. The consumer credit report it received did not show any of those items. Even Chase's own internal account records, as of a month before the adverse action letter, confirmed that plaintiff had not filed bankruptcy. There was, in fact, no delinquency on plaintiff's report. Nor had Experian provided the plaintiff's credit file to Chase. Based on its false and misleading adverse action notice to plaintiff, Bank violated ECOA and CUTPA.

B.  Bank significantly varied the statutory FCRA notice

The Fair Credit Reporting Act, 15 U.S.C. §1681m(a), in pertinent part, requires Bank to:

> (2) provide to the consumer . . . (A) the name, address, and telephone number of the consumer reporting agency (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) that furnished the report to the person; . . .
> (3) provide to the consumer . . .notice of the consumer's right –
> (A) to obtain, under section 1681j of this title, a free copy of a consumer report on the consumer from the consumer reporting agency referred to in paragraph (2), which notice shall include an indication of the 60-day period under that section for obtaining such a copy; and

7

(B) to dispute, under section 1681i of this title, with a consumer reporting agency the accuracy or completeness of any information in a consumer report furnished by the agency.

1. <u>The time frame was misstated</u>. Section 1681m(a)(3)(A) mandated that the Bank give notice of the time limits for requesting a free copy of the consumer's report under §1681j(b). The latter section specifies the time period as "not later than 60 days after receipt by such consumer of a notification pursuant to section 1681m of this title, that is, 60 days after receipt of an adverse action notice." Instead of sending a notice disclosing the proper time frame, that is, from *receipt* of the adverse action letter, the Bank's form letter told plaintiff that he had the right to obtain a copy of his report "if you make your request in writing within sixty (60) days from the date listed above." December 25, 2002 (a Wednesday) was "the date listed above"; due to normal mail processes, particularly at holiday time, the recipient would not receive the notice for at least a few days. In <u>Chauncey v. JDR Recovery Corp</u>., 118 F.3d 516 (7th Cir. 1997), the same language, "within thirty (30) days from receipt of this letter," violated the same time period of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g, allowing the consumer thirty days from "receipt" of a letter to dispute the debt.

2. <u>No writing requirement.</u> Section 1681j itself cross-refers to the consumer making "a request under §1681g of this title." Section 1681g allows the consumer to request his file. It does not limit the request to a writing, as confirmed by §1681m(a)(2)'s mandate that the user provide a toll-free telephone number to the consumer. Congress made the decision to afford the statutory protection to consumers whether they exercise their rights in writing or orally. While the majority of the

population may be capable of drafting a letter, a significant minority unfortunately does not have that capability, for lack of either literacy or English language skills.  In addition, people naturally tend to use the telephone rather than write, particularly when encouraged to do so by the FCRA's provision mandating the sender to provide reporting agency's toll free telephone number.

Not only did the Bank disclose a false time period for requesting a free credit report (from the date of the letter instead of the date of its receipt) but it falsely limited the request to a written request. For the Bank to unilaterally impose a nonstatutory writing requirement not only misleads the consumer, but places a heavy burden, sometimes insurmountable, on a portion of its intended beneficiaries.  See, e.g., National Institute for Literacy, The State of Literacy in America: Estimates at the Local, State and National Levels (1998), available through <http://www.nifl.gov>; Alan M. White and Cathy Lesser Mansfield, Literacy and Contract, 13 Stanford Law & Policy Review 233 (2002).

Compliance with the disclosure requirements of §1681m is easy. The Bank could safely follow the sample forms provided by the regulatory authority. See ECOA, Reg. B, Appx. C, sample forms. Yet, Chase intentionally adopted a noncomplying form. Its violation of the FCRA and CUTPA is indisputable.

C. <u>Chase gave no adverse action notice when it closed plaintiff's account.</u>

Chase closed plaintiff's credit card account in October, 2002. At the time, the account was current, paid in full, and in good standing. Plaintiff did not receive, and Chase has no record of sending, an adverse action notice letting plaintiff know that his account was closed because of an unrelated Oregon resident's bankruptcy. As Congress noted, "In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake." S. Rep. No. 589, 94th Con., 2d Sess. 4 (1976), reprinted in 1976 U.S.C.C.A.N. 403, 406. The salutary utilitarian significance of the adverse action notice (rectification of mistakes) was recognized in <u>Treadway v. Gateway Chevrolet Oldsmobile Inc.</u>, __ F.3d __ , 2004 WL 691644 (7th Cir. Mar. 28, 2004).

Since closing a current account is an adverse action, the ECOA mandated Chase to send plaintiff an adverse action notice. It did not.

II CHASE'S FALSE AND MISLEADING ADVERSE ACTION NOTICE ALSO VIOLATED CUTPA

The Connecticut Unfair Trade Practices Act prohibits "unfair or deceptive acts or practices." Conn.Gen. Stat. §42-110b(a). Connecticut courts are to be "guided by interpretations given by the Federal Trade Commission and the federal courts to" the FTC Act, 15 U.S.C. §45(a)(1). Conn. Gen. Stat. §42-110b(b).

<u>Deceptive Acts.</u> If a practice has a tendency and capacity to deceive, it violates the FTC Act. <u>F.T.C. v. Sterling Drug, Inc.</u>, 317 F.2d 669, 674 (2d Cir. 1963) (FTC Act abolishes rule of caveat emptor); <u>Goodman v. F.T.C.</u>, 244 F.2d 584, 604 (9th Cir.

10

1957). The objective "least sophisticated consumer" standard is applied to determine whether an act is deceptive. F.T.C. v. Standard Educ. Soc., 302 U.S. 112, 116 (1937) ("The best element of business has long since decided that honesty should govern competitive enterprises, and that the rule of caveat emptor should not be relied upon to reward fraud and deception"); Exposition Press, Inc. v. FTC, 295 F.2d 869, 872 (2d Cir. 1961); Charles of the Ritz Distr. Corp. v. FTC, 143 F.2d 676, 679 (2d Cir. 1944).

An act or practice is deceptive if three conditions are met. "First, there must be a representation, omission, or other practice likely to mislead consumers. Second, the consumers must interpret the message reasonably under the circumstances. Third, the misleading representation, omission, or practice must be material -- that is, likely to affect consumer decisions or conduct." Caldor, Inc. v. Heslin, 215 Conn. 590, 597, 577 A.2d 1009 (1990), quoting Figgie International, Inc., 107 F.T.C. 313, 374 (1986). Under the Caldor standard, a false statement of the reasons for credit denial, or a misrepresentation of the consumer's FCRA rights is deceptive. Bailey Employment System, Inc. v. Hahn, 545 F. Supp. 62, 67 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983).

Unfair acts. Sending a false or misleading notice is not only deceptive but is also "unfair" because it is within "at least the penumbra" of some common law, statutory "or other established concept" of unfairness. FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 244 n. 5 (1972). Unfairness depends on "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise -

11

whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed. Reg. 8355 (1964) (emphasis added).  "[A]ll three criteria need not be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . ." <u>Associated Investment Co. Ltd. Partnership v. Williams Associates IV</u>, 230 Conn. 148, 156, 645 A.2d 505 (1994).

Chase's letter offends public policy as it has been established by the ECOA and the FCRA under the first test. Under the third test, misleading consumers about important rights provided by Congress  may cause substantial injury to consumers by loss of their rights, but also puts law abiding competitors, who afford consumers their rights, at a disadvantage.

## CONCLUSION

Chase gave plaintiff  no information about closing his account; and false information about the reasons for reducing his credit line, and about how to exercise his right to a free copy of his credit report. Partial summary judgment should enter for plaintiff on this aspect of his claims.

THE PLAINTIFF

BY_____/s/ Joanne S. Faulkner__
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net

This is to certify that the foregoing was mailed on April 7, 2004, postage prepaid, to:

Thomas Stagg
Simmons, Jannace & Stagg
90 Merrick Ave # 102
East Meadow NY 11554

Michelle Blum
Jones Day
3 Park Plaza   #1100
Irvine CA 92614-5976

___/s/ Joanne S. Faulkner____
Joanne S. Faulkner