IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JOHN J. CHAPMAN

v.                                                                         CASE NO. 3:03CV 316 (JCH)

EXPERIAN INFORMATION SOLUTIONS, INC.
CHASE MANHATTAN BANK USA, N.A.                         April 7, 2004

PLAINTIFF'S LOCAL RULE 56(a)1 STATEMENT: CHASE

Following are the material facts as to which there is no genuine issue to be tried. The facts are based on plaintiff's affidavit and the exhibits thereto.

1. Plaintiff is a lifelong resident of Connecticut.

2. In October 2000, plaintiff opened a credit card account with Chase.

3. On October 9, 2002, when plaintiff's credit card was current, paid up to date, and in good standing, Chase closed plaintiff's credit card account.

4. Plaintiff did not get written notice that his credit card account had been closed.

5. Chase has a form letter notifying cardholders when an account is closed due to bankruptcy notification (Bates 173 [improperly designated confidential by Chase]; testimony of Allyson Foster, attached).

6. Plaintiff could not use his Chase card at a check out counter in late November, 2002.

7. Plaintiff contacted Chase on November 25, 2002, which reopened his credit card account the same day.

8. By letter dated December 25, 2002, Chase reduced the credit limit on plaintiff's account from $5,900 to $3,000.

9. The letter of December 25, 2002, was admittedly false when it said that one of the reasons for closing plaintiff's account was - "The consumer credit report we received shows a recent garnishment, foreclosure, lien, repossession, judgment, and/or bankruptcy." Testimony of Chase Witness Paul Arena, excerpt attached, with regard to Chase Bates 338-42, the consumer credit report, that it showed no such negative item.

10. The letter of December 25, 2002, falsely identified Experian as the source of the credit bureau information. Testimony of Kimberly Hughes, excerpt attached, that Chase did not get information from plaintiff's credit report at any time during 2002.

11. On January 2, 2003, Plaintiff called Chase to complain.

12. Chase restored plaintiff's credit limit on January 3, 2003.

13. By letter dated January 14, 2003, Chase confirmed that plaintiff's account "remains in good standing" and "is in a current status."

14. Chase's records of plaintiff's credit card account (Chase Bates 3-4; not appended for privacy reasons) include the following: One John Solberg, residing in Oregon, filed a Chapter 7 Bankruptcy Petition in Oregon on September 30, 2002. Chase electronically received notice of Mr.

Solberg's bankruptcy. On October 3, 2002, Mr. Solberg's full name, full Oregon address, the Eugene, Oregon location of the bankruptcy court, bankruptcy docket and chapter number, filing date, name and phone number of debtor's Oregon attorney all appeared automatically on plaintiff's credit card account record.  On October 9, 2002, a Chase operator pulled up plaintiff's account record, coded it as bankrupt based on the Solberg/ Oregon entries, and closed plaintiff's account. On Monday, November 25, 2002, plaintiff's account record was appropriately annotated, "CH (cardholder) did not file." On Nov. 27, "RMV BKCY (Remove bankruptcy) due to coded in error" was entered on Mr. Chapman's account record.

                              THE PLAINTIFF


                              BY___/s/ Joanne S. Faulkner___
                              JOANNE S. FAULKNER ct04137
                              123 Avon Street
                              New Haven, CT 06511-2422
                              (203) 772-0395
                              j.faulkner@snet.net

TESTIMONY OF CHASE, per ALLYSON FOSTER Dec. 12, 2003 p. 48

8   Q.   When is an account impacted if there is a
9 bankruptcy notification?
10   A.   When a bankruptcy processor reviews the
11 appropriate information and documents, follows
12 procedure, and themselves codes it, so to speak,
13 bankrupt.
14   Q.   At that point the credit card is closed?
15   A.   Yes, ma'am.
16   Q.   Is a notification sent to the cardholder
17 that his or her account has been closed?
18   A.   Yes, ma'am.
19   Q.   That is, what, about the same time that
20 somebody enters the coding physically on the
21 account?
22   A.   The letter would be sent at approximately
23 that time, yes, ma'am.

CHAPMAN v. EXPERIAN                                February 4, 2004

```
                                                         Page 1
 1   IN THE UNITED STATES DISTRICT COURT
 2   FOR THE DISTRICT OF CONNECTICUT
 3   - - - - - - - - - - - - - - - x
 4   JOHN J. CHAPMAN,              :
 5            Plaintiff,           : Civil Action No.
 6            vs.                  :   3:03CV316
 7   EXPERIAN INFORMATION          :     (JCH)
 8   SERVICES, INC., CHASE         :
 9   MANHATTAN BANK USA, N.A.,     :
10            Defendant.           :
11   - - - - - - - - - - - - - - - x
12
13
14            Deposition of PAUL P. ARENA, taken
15   pursuant to the Federal Rules of Civil
16   Procedure at the offices of Sanders, Gale &
17   Russell, 437 Orange Street, New Haven,
18   Connecticut, before Elizabeth A. Zawacki, LSR
19   #00087, a Registered Merit Reporter and Notary
20   Public in and for the State of Connecticut, on
21   Wednesday, February 4, 2004, at 10:05 a.m.
22
23
24
25
```

SANDERS, GALE & RUSSELL                          (203) 624-4157

CHAPMAN v. EXPERIAN                                February 4, 2004

Page 32

```
 1    Q.    What does that mean again?
 2    A.    Delinquency greater than 60 days.
 3          I'm not sure about any others in here.
 4    I'm not sure what some of these codes are.  They
 5    could be in there, but I'm not sure how to interpret
 6    all of those reports.
 7    Q.    So as far as you can tell, there was a
 8    recent delinquency?
 9    A.    Yes.
10    Q.    But you couldn't find anything about a
11    recent garnishment, foreclosure, lien, repossession,
12    judgment or bankruptcy in this 338 to 342?
13    A.    No, not from Bates 338 to 340.
14    Q.    Where else would you have gotten
15    bankruptcy information?
16    A.    It would have come directly off the
17    account performance report or review, which if we go
18    back to Bates 1 through 5, on Bates 3 and 4, we
19    actually received notice that there was a bankruptcy
20    for that Social Security number.  It appears on
21    October 3 is when we got the petition, and then
22    October 9 it was actually coded as bankrupt.
23    Q.    How can you tell from 3 and 4 that you got
24    a petition on October 3?
25    A.    It actually has documentation on Bates 4
```

SANDERS, GALE & RUSSELL                            (203) 624-4157

CHAPMAN v. EXPERIAN                                February 4, 2004

Page 79

1  this question, external information that would have
2  been received from Experian, is it your
3  understanding that Experian was reporting delinquent
4  codes or information that was derogatory?
5       A.   My understanding from the Bates 338 is
6  that they were reporting that there was delinquency.
7  I don't see any record of a collection account or a
8  bankruptcy or anything along that line, for me in
9  reading that particular layout.  There was
10 derogatory information based off of delinquency.
11 There was no public record of bankruptcy or
12 collection account.
13      Q.   You testified earlier with respect to
14 Bates 338, and you were not sure of some of the
15 categories, what they stood for.  Why is that?
16      A.   338 is not the normal format in which I
17 would receive information from the Experian database
18 format.  Normally I would receive an Excel
19 spreadsheet that lists out the account number and
20 all the details that are associated with creating
21 the BAZ score, the account performance factors, as
22 well as the Experian risk factors.
23      Q.   And the Excel spreadsheet you are
24 referring to is at page 81, 82?  That's the format
25 you would typically receive?

SANDERS, GALE & RUSSELL                              (203) 624-4157

KIMBERLY HUGHES - 1/23/04                                    42

1   A.   I have no knowledge that Experian has
2   identified itself as the third credit bureau.
3   Q.   At the bottom of that blacked-out stuff is
4   credit score date and that is 11/15/2.  Is there any
5   record that Experian gave information about either John
6   Chapman or John Solberg to Chase on 11/15/2?
7   A.   I can only answer that with my knowledge that
8   Experian did not provide any information whatsoever to
9   Chase regarding John Chapman in the calendar year 2002.
10  I do know that we have an inquiry for Mr. Solberg in
11  the month of November because we have one for every
12  month in 2002 except for January and July, but I do not
13  know the day of the month that that inquiry occurred.
14  Q.   Once again, this talks about an "EAZ score."
15  Is that a term you're familiar with?
16  A.   No, ma'am.
17  Q.   And a few line below the dark portion,
18  there's a "UD risk score."  Is that a term you know?
19  A.   No, ma'am.
20  Q.   Ten lines up from the bottom there's a
21  bankruptcy score of 684.  Are you familiar with a
22  bankruptcy score?
23  A.   No, ma'am.
24  Q.   Let's turn to Chase 64, please.
25  A.   (Witness complies.)

JANIS ROGERS & ASSOCIATES    214/631-2655    DALLAS, TEXAS

This is to certify that the foregoing was mailed on April 7, 2004, postage prepaid, to:

Thomas Stagg
Simmons, Jannace & Stagg
90 Merrick Ave # 102
East Meadow NY 11554

Michelle Blum
Jones Day
3 Park Plaza   #1100
Irvine CA 92614-5976

                                                     ___/s/ Joanne S. Faulkner___
                                                     Joanne S. Faulkner